IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>LEE CARY,<br><br>                Defendant. | 8:13CR267<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the court on the motion of defendant Lee Cary (Cary) to suppress (Filing No. 22). Cary is charged in the Indictment with the June 18, 2013, possession and the possession with intent to distribute gamma-butyrolactone (GBL) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). **See** Filing No. 15 - Indictment. Cary seeks to suppress any evidence derived as a result of the unlawful detention of an express United States Postal Service package and the illegal execution of a no-knock search warrant following a controlled delivery of the package. **See** Filing No. 22 - Motion.

The court held an evidentiary hearing on the motion on November 8, 2013. Cary was present for the hearing along with his counsel, Steven J. Lefler. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. The court heard the testimony of Nebraska State Patrol (NSP) Investigator Richard Lutter (Investigator Lutter). The court received into evidence a copy of an application and affidavit for a search warrant (Exhibit 1) and a copy of a search warrant (Exhibit 2). A transcript (TR.) of the hearing was prepared and filed on November 19, 2013. **See** Filing No. 36. At the conclusion of the hearing, the court required the parties to submit post-hearing briefs. Cary filed a brief (Filing No. 37) on November 29, 2013, and an amended brief (Filing No. 41) on December 5, 2013. The government filed a brief (Filing No. 42) in response on December 16, 2013, whereupon the matter was deemed submitted.

**FINDINGS OF FACT**

On June 15, 2013, Homeland Security Special Agent A. Vincik informed Investigator Lutter, a Commercial Interdiction Unit narcotics investigator with the Nebraska State Patrol (NSP), that on June 10, 2013, Customs and Border Patrol seized

a package containing GBL (Ex. 1). The package was shipped from China and was addressed to Cary at 1719 North 107 Street, Omaha, Nebraska 68114 (residence) (Ex. 1).

Subsequently, Investigator Lutter, as the investigating case agent, performed background checks, including criminal history and property ownership checks, to determine whether Cary or anyone else lived at the address listed on the package (TR. 7-9, 16). Investigator Lutter discovered Cary and Miles Cary lived at the address listed on the package and Cary's mother owned the residence (TR. 9-10, 17-18). The records indicated Miles Cary's driver's license lists the address on the package as his primary residence (TR. 9-10). Investigator Lutter did not conduct surveillance of the residence to determine whether Miles Cary actually resided at the residence (TR. 18). However, the records Investigator Lutter obtained from his investigation did not indicate Miles Cary was associated with an address other than the address where the officers would conduct the controlled delivery (TR. 19-20).

Investigator Lutter's background checks on Cary and Cary's mother did not show any criminal history (TR. 17-18). However, Investigator Lutter's background check on Miles Cary indicated Miles Cary was convicted of misdemeanor possession of a concealed weapon and felony possession of methamphetamine (TR. 9-10). Investigator Lutter noted Miles Cary was sentenced on September 24, 2012, for his misdemeanor possession of a concealed weapon (TR. 10). Investigator Lutter believes the concealed weapon was a handgun (TR. 20).

Miles Cary's criminal history concerned Investigator Lutter because Miles Cary previously had a concealed weapon in conjunction with possession of a controlled substance and the officers were about to conduct a controlled delivery of a controlled substance to the residence Miles Cary lists as his primary residence (TR. 10-11, 15). Due to Investigator Lutter's concern about the presence of a concealed weapon, he requested a SWAT team to execute the search warrant, to secure the residence, and make entry safe for the officers and people within the residence (TR. 10-11, 20). NSP written policy allows Investigator Lutter to use a SWAT team to execute a warrant and secure an area after a controlled delivery occurs (TR. 15-17). Based on Investigator Lutter's experience, SWAT is generally used only when a case involves a concealed weapons charge although NSP policy allows for SWAT's use during any controlled

2

delivery (TR. 15-17).  After receiving permission to use a SWAT team, Investigator Lutter applied for the search warrant (TR. 11-12).

Before Investigator Lutter presented the application and affidavit and search warrant to a judge, he received a call from the SWAT team leader, Investigator Alan Eberle (Investigator Eberle) (TR. 12).  Investigator Eberle asked Investigator Lutter to request permission to execute a no-knock warrant to alleviate danger to the officers executing the warrant by allowing Investigator Eberle and his SWAT team to approach the residence, make entry, and secure the residence without having to compromise their positions (TR. 12-13, 20-21).  Investigator Lutter testified if the SWAT team did not execute a no-knock warrant, the officers would have to stand on a porch, knock and announce themselves, and potentially open themselves to danger (TR. 13).

During Investigator Lutter's presentation of the warrant to a judge, Investigator Lutter explained SWAT wanted to execute a no-knock warrant because of the criminal history of one of the parties living at the residence to be searched (TR. 14-15).  The reviewing judge allowed Investigator Lutter to amend, in handwriting, the affidavit and warrant to include a no-knock provision (TR. 14-15).  Thereafter, Investigator Lutter added the following information to the affidavit:  "Based on criminal history of Parties involved your affiant requests that warrant be served by NSP SWAT without knocking or announcing."  (TR. 14-15; Ex. 1 - Investigator Lutter Aff.).  Additionally, Investigator Lutter added to the warrant:  "IT IS FURTHER ORDERED, that execution of the Search Warrant be forthwith during DAY HOURS.  *without knock or announcement*" (TR. 14-15; Ex. 2 - Search Warrant (emphasis added for handwritten portion)).  Investigator Lutter signed and dated the handwritten additions to the affidavit and warrant (Exs. 1 and 2).  After obtaining the signed warrant, SWAT made a no-knock entry into the residence (TR. 16).

## LEGAL ANALYSIS

Cary raised numerous issues in his motion; however, at the evidentiary hearing the issues discussed were whether the government properly detained and searched the package sent to Cary and whether there was sufficient justification to support issuance of a no-knock warrant.  At the conclusion of the evidentiary hearing, the undersigned magistrate judge requested the parties limit their post-hearing briefing to the following

3

issues:  1)  the standard used to determine whether to issue a no-knock warrant and 2) whether the trigger for an anticipatory search warrant must be in the warrant, or may be in the affidavit supporting the warrant alone.  **See** Filing No. 36 - TR. 22.

**A.    Detention**

Cary argues the package was unconstitutionally detained and searched.  **See** Filing No. 22 - Motion.  "[S]earches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border[.]"  ***United States v. Ramsey***, 431 U.S. 606, 616 (1977).  The "border-search exception" to the warrant requirement applies to international mail.  **See** ***Ramsey***, 431 U.S. at 620.  Under the well-established rule stated in ***Ramsey***, the package addressed to Cary was constitutionally detained and searched.

**B.    Triggering Condition**

"[T]he Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself[.]"  ***United States v. Grubbs***, 547 U.S. 90, 99 (2006).  In this matter, the triggering condition for the anticipatory search warrant was set forth in the affidavit in support of the warrant. Therefore, failure to include the triggering condition in the anticipatory warrant does not invalidate the warrant.

**C.    Anticipatory Search Warrant**

    **1.    No-knock Provision**

The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Generally, when executing a warrant, officers are required to follow the knock and announce rule.  **See** ***Wilson v. Arkansas***, 514 U.S. 927, 930 (1995) (discussing the knock and announce rule); **see also** ***Hudson v. Michigan***, 547 U.S. 586, 596 (2006) (same); ***United States v. Tyler***, 238 F.3d 1036, 1040 (8th Cir. 2001) ("[T]he police must ordinarily knock and announce their presence before executing a search warrant.").  However, "[t]he Fourth Amendment does not forbid no-

4

knock searches." *United States v. Scroggins*, 361 F.3d 1075, 1081 (8th Cir. 2004). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997); **see also** *Scroggins*, 361 F.3d at 1081. "This showing is 'not high,' but is one that the police must still make when the defendant challenges the reasonableness of a no-knock search." *Scroggins*, 361 F.3d at 1081.

Cary argues the affidavit and application for the search warrant does not meet the reasonable suspicion standard because there is no indication drugs would be destroyed and the officers did not sufficiently support their suspicion Miles Cary lived at the residence. **See** Filing No. 41 - Amended Brief p. 3-4. Cary contends the affidavit did not provide the judge with information on Miles Cary's conviction or what type of weapon was involved. *Id.* Further, Cary argues the officers did not conduct surveillance or perform a trash pull to determine if Miles Cary lived at the address as in *Scroggins*. *Id.* at 4 (**citing** *Scroggins*, 361 F.3d at 1081 (investigating officers, after learning a resident of a home had a criminal history with narcotics and weapons violations, checked a license plate of a vehicle at the residence to determine the occupants and conducted a trash pull, which resulted in finding drug and weapon paraphernalia)).

Cary also argues the *Leon* good faith exception should not apply because Investigator Lutter tried to mislead the judge. *Id.* Cary argues Investigator Lutter's written statement "based on the criminal history of the [P]arties" was intended to mislead the issuing judge because there were no "parties" as only Miles Cary had a criminal record. *Id.* Additionally, Cary argues "criminal history" is misleading because it implies Miles Cary's criminal background was extensive. *Id.* Lastly, Cary argues the issuing judge was not impartial because he helped Investigator Lutter craft the language added to the affidavit and warrant. *Id.*

In this case, the no-knock warrant was requested in conjunction with a drug investigation and based on information an individual, who had a conviction for carrying a concealed weapon and a charge for felony possession of methamphetamine, lived at the residence where a controlled delivery of a controlled substance would shortly occur.

5

Investigator Lutter conducted a sufficient investigation to determine whether Miles Cary lived at the residence. According to the records Investigator Lutter reviewed, Miles Cary was not associated with an address other than the address where SWAT would conduct the controlled delivery. Due to Miles Cary listing the address as his primary residence, his concealed weapon charge, and that a controlled delivery of a controlled substance would occur at the residence, Investigator Lutter requested SWAT to execute a no-knock warrant in the interest of officer safety. Under the circumstances presented in this case, the court finds Investigator Lutter satisfied the "not high" standard of showing the officers had reasonable suspicion knocking and announcing their presence when executing the warrant would threaten officer safety.

Cary's arguments the information presented was insufficient and did not rise to the level of information provided in *Scroggins* is unconvincing. *Scroggins* did not set a minimum requirement to find reasonable suspicion to issue a no-knock warrant. Additionally, the Eighth Circuit has determined reasonable suspicion exists when lesser information than provided in *Scroggins* is used as a basis for a no-knock warrant. **See, e.g., Tyler**, 238 F.3d at 1040 (concluding reasonable suspicion existed because officer attested defendant "possessed weapons and was likely to destroy evidence of his drug crimes").

### 2. Probable Cause

Regardless of whether reasonable suspicion supported issuance of a no-knock warrant, "the exclusionary rule does not apply to violations of the knock-and-announce requirement of the Fourth Amendment." **United States v. Gaver**, 452 F.3d 1007, 1008 (8th Cir. 2006) (**citing Hudson**, 547 U.S. at 590-602). Cary does not appear to dispute the search warrant was based on sufficient probable cause. In any event, the court finds probable cause supported issuance of the anticipatory search warrant. Probable cause to issue a search warrant exists if there is "a fair probability that contraband or evidence of a crime will be found in a particular place." **Illinois v. Gates**, 462 U.S. 213, 238 (1983). "Anticipatory warrants are . . . no different in principle from ordinary warrants. They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed." **United States v. Donnell**, 726 F.3d 1054, 1056 (8th

Cir. 2013) (**citing *United States v. Grubbs***, 547 U.S. 90, 96 (2006)).  Courts provide "great deference to the issuing judge's determination that [the] affidavit established probable cause." ***United States v. Keele***, 589 F.3d 940, 943 (8th Cir. 2009) (alteration in original).  Upon satisfaction of the triggering condition, delivery of the package containing a controlled substance, probable cause existed to believe evidence of a crime would be found in Cary's residence.  Because the court finds probable cause supported issuance of the warrant, any alleged violation of the knock and announce rule would not result in suppression of evidence seized from Cary's residence.

### 3. Leon Good Faith Exception

Assuming, *arguendo*, there was no reasonable suspicion to support issuance of a no-knock warrant or even probable cause to search the residence, the evidence seized remains admissible under the ***Leon*** good faith exception.  "Under the ***Leon*** good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." ***United States v. Patten***, 664 F.3d 247, 251 (8th Cir. 2011).  There are four circumstances that preclude a finding of good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

***United States v. Cannon***, 703 F.3d 407, 412 (8th Cir. 2013).

SWAT's reliance on the search warrant was objectively reasonable.  First, the court finds there is no evidence Investigator Lutter misled the issuing judge by writing "criminal history" and "parties" or provided false information known to be false.  Second, there is no evidence the issuing judge abandoned his role or that the warrant was facially deficient or so lacking in probable cause as to make belief in the warrant entirely unreasonable.  Lastly, there is no evidence supporting Cary's argument the issuing

7

judge crafted the language Investigator Lutter added to the affidavit and warrant. Investigator Lutter merely asked whether the judge would accept a handwritten amendment in lieu of a typewritten amendment to the affidavit and warrant and the issuing judge said a handwritten amended was adequate. Accordingly,

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON**:

The defendant's Motion to Suppress (Filing No. 22) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 2nd day of January, 2014.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge